## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

UNITED STATES OF AMERICA

VERSUS                                          CRIMINAL NO. 5:03cr24(01)-DCB
                                                             5:03cr24(04)-DCB

REGINALD ODOM &
MELVIN ANDERSON                                                     DEFENDANTS

### ORDER OF FORFEITURE & NUNC PRO TUNC AMENDMENTS

This matter comes before the Court on the government's request for a criminal forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982 against the defendants Reginald Odom and Melvin Anderson. Having taken evidence and oral argument in this matter and having reviewed the briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court orders as follows:

### FACTS AND PROCEDURAL HISTORY

On September 25, 2003, the government filed a sealed five-count indictment against Odom, Anderson, and three other defendants. In Count 1 of the indictment, Odom is charged with entering into a conspiracy to possess a controlled substance in violation of 21 U.S.C. § 846. The government avers in Count 2 that Odom and Anderson conspired to launder illegally obtained funds in violation of 18 U.S.C. § 1956(h). The indictment's third count contains the allegation that Odom violated 21 U.S.C. § 848 by being the mastermind of the criminal enterprise identified in Count 1 of

-1-

the indictment.  In the event of a conviction on the substantive count involving drug trafficking, Count 4 requests that Odom be subject to criminal forfeiture pursuant to 21 U.S.C. § 853. Finally, Count 5 of the indictment contains a money laundering specific forfeiture charge, which pertains to both Odom and Anderson, see 18 U.S.C. § 982(a)(1).

On December 9, 2003, the government filed a Bill of Particulars [docket entry no. 68], wherein the government specified the property it believed to be subject to forfeiture under 18 U.S.C. § 982(a)(1).[1]  The Bill of Particulars was silent with regard to the drug-related forfeiture count.  On December 18, 2003, the United States procured a post-indictment restraining order [docket entry no. 74], whereby the Court authorized the government to take action necessary to preserve the availability of the property subject to forfeiture.

On March 27, 2004, Anderson pled guilty to money laundering. (Anderson Change of Plea Tr. at 22.)  Shortly thereafter on April 13, 2004, Odom pled guilty to Count 1 of the indictment, conspiracy to possess a controlled substance.  (Odom Change of Plea Tr. at 17.)  The government then moved to dismiss the remaining four

---

[1]The government seeks criminal forfeiture with regard to the following three items: (1) Odom's 2001 Lexus automobile; (2) three parcels of real property located in Claiborne County, collectively known as "Club Rolex"; and (3) a money judgment against Odom.  It is unclear exactly what, if any, interest Anderson has in Club Rolex.

charges against Odom, including the two forfeiture counts.  See
Odom Judgment [docket entry no. 191].  On February 7, 2005, Odom
was sentenced to 168 months in prison.  Anderson was sentenced to
a 30-month prison term on February 8, 2005.

Despite the dismissal of the forfeiture counts, the government
indicated at Odom's sentencing hearing that it wished to proceed
with the forfeiture action.  When the Court asked Odom's attorney,
Timothy Meche, how he wished to proceed, Meche responded, "In the
interest of judicial economy, I'm going to make a suggestion that
the judge set [the forfeiture hearing] a couple of weeks from now,
and I'll get to work with Mr. Odom and Mr. Kennedy, and I have a
feeling it might work itself out."  (Odom Sentencing Hearing Tr. at
18.)  Mr. Kennedy, the Assistant U.S. Attorney, then stated that he
had no objection to delaying the forfeiture hearing "as long as the
defendant will articulate on the record that he's waiving any
rights or any kind of prejudice in this matter by granting a delay
from the Court."  Id.  Mr. Meche then stated, "I've conferred with
[Odom], Your Honor, and he agrees to waive any potential rights
that gives [sic] him the right to an immediate resolution of that
issue and agrees that [the forfeiture hearing] should be set at a
date perhaps to be determined later."  Id. at 19.

At Anderson's sentencing, the government requested that the
Court enter a preliminary order of forfeiture with regard to
certain real property which was purchased with laundered funds.

(Anderson Sentencing Hearing Tr. at 61.)  The Court then addressed Lee Lott, Anderson's attorney, "Mr. Lott, yesterday there was a waiver made by counsel for Mr. Odom as to the preliminary order of forfeiture . . . Do you wish to do the same thing for your client?" Id. at 62.  After conferring with Anderson, Lott asked the Court, "The gist of it is that we'll just deal with [the forfeiture] issue another day?"  Id.  The Court responded, "That's exactly what it amounts to, yes, sir."  Kennedy then stated, "Understanding that the defendant has agreed to have a later final determination or trial on the forfeitability of the properties and moneys, as set forth more fully in the indictment, that they've waived any right or any prejudice to any delay in having the matter conducted after sentencing today."  Id. at 63.  Mr. Lott then responded, "That's fine, Your Honor."  Id.

In both cases, the Court proceeded with the sentencing hearing.  Subsequently, a written judgment was entered; however, neither judgment mentioned that the forfeiture issue was to be addressed at a later date.  Moreover, although the government requested that a preliminary order of forfeiture be issued, it never submitted a proposed preliminary order, and no such order was ever entered.  On June 21, 2005, a forfeiture hearing was held, and on February 2, 2006, another hearing was held.

**DISCUSSION**

-4-

In this case, the government seeks criminal forfeiture against Odom of (1) a 2001 Lexus automobile; (2) three parcels of real property located in Claiborne County, collectively known as "Club Rolex"; and (3) a money judgment.  Inasmuch as Odom pled guilty to conspiring to possess a controlled substance, see 21 U.S.C. § 846, forfeiture is sought pursuant to 21 U.S.C. § 853.  Section 853 provides that those convicted of a qualifying offense under Title 21 shall forfeit "(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; (2) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . ."

As to Anderson, who pled guilty to money laundering, see 18 U.S.C. § 1956, the government seeks forfeiture of any interest held by Anderson in Club Rolex.  Section 982 of Title 18 of the United States Code states, "The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."

Federal Rule of Criminal Procedure 32.2 governs the procedure for criminal forfeitures.  The Rule instructs, in pertinent part:

> **(a) Notice to the Defendant.**  A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of

property as part of any sentence in accordance with the applicable statute.

**(b) Entering a Preliminary Order of Forfeiture.**

**(1) In General.** As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

**(2) Preliminary Order.** If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party's interest in all or part of it. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

**(3) Seizing Property.** The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property subject to forfeiture; to conduct any discovery the court considers proper in identifying, locating, or disposing of the property; and to commence proceedings that comply with any statutes governing third-party rights. At sentencing – or at any time before sentencing if the defendant consents – the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment. The court may include in the order of forfeiture conditions reasonably necessary to preserve the property's value pending any appeal.

**(4) Jury Determination.** Upon a party's request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

. . . .

Thus, under the Rule, a criminal forfeiture is to proceed under a rather rigid procedural scheme. First, after a conviction is obtained on a substantive count which authorizes forfeiture, the court is to, "[a]s soon as practicable" thereafter, determine whether the requisite nexus is present between the property sought to be forfeited and the offense. The defendant is entitled to offer evidence concerning the nexus requirement. If the government proves the existence of a nexus, the Court is to enter a preliminary order of forfeiture without regard to any potential third-party claims to the property. Then, at sentencing, the preliminary order of forfeiture should be made a part of the sentence and included in the judgment. Once included in the judgment, the order of forfeiture becomes a final order which is appealable by the defendant. The rights of third parties are to be determined in an ancillary proceeding, see Federal Rule of Criminal Procedure 32.2(c).

In the two forfeiture hearings held in this case, the defendants made both procedural objections and nexus-related arguments.

## I.   Procedural Objections[2]

_____

[2]Although not raised by the defendants, the Court has been concerned with whether it has jurisdiction to enter a preliminary order of criminal forfeiture now, some 30 months after the sentences were imposed and the criminal judgments were entered. After thoroughly researching the issue, the Court is convinced that it does indeed have jurisdiction to order a criminal forfeiture. First, even though the written judgment failed to mention criminal

Odom raises two procedural objections to the government's request for forfeiture.  First, Odom asserts that he was provided with inadequate notice that the government intended to seek forfeiture against him in the form of a monetary judgment.  Second, Odom argues that the government is estopped from seeking forfeiture of his property because the government dismissed all remaining counts of the indictment – including the forfeiture counts – when Odom pled guilty to conspiring to possess a controlled substance.[3]

    A.   Notice of Monetary Judgment

As previously mentioned, a bill of particulars was entered in this case which identifies both Club Rolex and Odom's 2001 Lexus as items to be forfeited.  The bill, however, is silent as to the

---

forfeiture, a forfeiture order was expressly allowed by the Court at sentencing, with the amount to be determined later.  When an oral sentence and written judgment conflict, the oral sentence controls.  United States v. Loe, 248 F.3d 449, 464 (5th Cir. 2001).  Second, the defendants were put on notice of the criminal forfeiture at sentencing, and the Court continued the forfeiture portion of the sentence **at the defendants' insistence.**

Although some Courts have held that a criminal forfeiture may not be entered after the issuance of a criminal judgment, United States v. Pease, 331 F.3d 809 (11th Cir. 2003), United States v. King, 368 F. Supp. 2d 509 (D.S.C. 2005), this case is distinguishable since forfeiture was clearly contemplated at sentencing and was only postponed due to the defendants' requests.  Many courts outside the Eleventh Circuit have allowed a forfeiture amendment to a criminal judgment that originally failed to include forfeiture.  United States v. Bennett, 423 F.3d 271, 279 (3d Cir. 2005) (collecting cases from the First, Fourth, Fifth, and Eighth Circuits, and holding that the district court retained jurisdiction to add forfeiture to sentence after issuance of written judgment).

[3]Anderson's criminal judgment reveals that the government did not dismiss the remaining forfeiture count against him.

money judgment the government is seeking.  Thus, Odom argues that the failure to include the money judgment in the bill of particulars deprived him of the required notice.[4]

The defendant cites no law requiring the government to provide notice of the possibility of a money judgment.  On the other hand, other courts that have addressed the issue have found that no such notice is required.  United States v. Misla-Aldarondo, 478 F.3d 52, 72 (1st Cir. 2007) (holding that where forfeiture is allowable, the government may seek and enforce a money judgment as a substitute for any unavailable assets "even where the government has not expressed an intent to do so at any time before it seeks such an order."); see United States v. Navarro-Ordas, 770 F.2d 959, 969 n.19 (11th Cir. 1985) (government is not required to advise defendant in indictment that he may be subject to cash forfeiture if assets subject to forfeiture cannot be found); United States v. Tedder, 2003 WL 23204849 (W.D. Wis. July 28, 2003) (concluding that neither due process nor Fed. R. Crim. Proc. 7(c) requires the government to provide notice of intent to seek a money judgment). This Court similarly finds that the government was not required to

---

[4]The Fifth Circuit has held that a criminal forfeiture order may take the form of a money judgment against a defendant.  United States v. Martino, 681 F.2d 952, 961 (5th Cir. 1982); see also United States v. Baker, 227 F.3d 955, 970 (7th Cir. 2000); United States v. Canderlaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999); United States v. Voight, 89 F.3d 1050, 1088 (3d Cir. 1996); United States v. $814,254.76 in U.S. Currency, 51 F.3d 207, 210 (9th Cir. 1995).

provide specific notice in the indictment that the defendants could be subjected to a money judgment.

B.   Effect of Dismissal of the Forfeiture Count

Odom contends that since the government dismissed Count 4 of the indictment, i.e., the drug-related forfeiture count, the government is barred from pursuing a criminal forfeiture against him.   The government argues that: (1) the dismissal was inadvertent, (2) the defendant was aware at sentencing that the government intended to seek a criminal forfeiture, and (3) forfeiture is an element of the **sentence**, not a substantive count that must be alleged in the indictment.

"Criminal forfeiture is a form of punishment designed to 'divest the criminal defendant of the profits of the illegal activity for which he has been convicted'; [a]s such, it is a part of the sentence rather than the substantive offense."   United States v. Ferrario-Pozzi, 368 F.3d 5, 8 (1st Cir. 2004) (citations omitted).   Rule 32.2 requires that the government notify the defendant that it is seeking to have specific property forfeited either through the indictment or through an information.   In this case, Odom was notified that the government intended to seek criminal forfeiture (1) in the indictment, (2) in the bill of particulars, (3) in a post-indictment order allowing the government to "preserve the availability of the subject property," [Post-Indictment Order, at 2, docket entry no. 74], and (4) at the

sentencing hearing.  All that is required of the government is that it provide the defendant with notice of forfeiture.  Odom clearly was on notice that the government sought forfeiture.

Thus, the dismissal of the forfeiture count would only impact the government's ability to seek forfeiture in this case if Odom believed that the United States was no longer seeking that punishment against them.  A review of the record unambiguously shows that Odom knew that the government intended to seek a forfeiture despite the dismissal.  The sentencing transcript, as mentioned <u>supra</u>, demonstrates that all parties **agreed** to address the forfeiture claim at a later date.[5]  In fact, Odom explicitly waived his right to assert a delay-related argument.  (Odom Sentencing Tr., at 19.)  Accordingly, the dismissal of Count 4 has no effect on the government's ability to seek a criminal forfeiture in this matter.

## II.  Merits of the Forfeiture Claims Against Odom

There are two theories under which the government may request a criminal forfeiture under 21 U.S.C. § 853(a): (1) that the property sought to be forfeited either constitutes, or was derived from, proceeds resulting from a violation of Title 21; or (2) that

---

[5]It should be noted that the sentencing hearing occurred after the government's dismissal of Count 4.  At sentencing, Odom requested that the Court delay ruling on the criminal forfeiture. At that time, Odom made no mention of his current argument, i.e., that the Court could not grant a forfeiture due to Count 4's dismissal.  Odom's argument was initially raised at Odom's first forfeiture hearing.

the property sought to be forfeited was used to facilitate the Title 21 violation.  Under either theory, the government bears the burden of "establish[ing] the requisite nexus between the property and the offense by a preponderance of the evidence."  United States v. Juluke, 426 F.3d 323, 326 (5th Cir. 2005); United States v. Gasanova, 332 F.3d 297, 300-01 (5th Cir. 2003) (joining "all other circuit courts" and holding that government must meet its burden by a preponderance of the evidence rather than beyond a reasonable doubt); see also United States v. Real Property, 173 Fed. Appx. 345, 346 (5th Cir. 2006).

     With regard to the first theory, i.e., that the property sought constitutes proceeds or was derived from proceeds of the offense, "the government may establish a rebuttable presumption that property is subject to forfeiture if the property was (1) acquired during the period of the violation **and** (2) that there is no other likely source for such property."  Juluke, 426 F.3d at 327-28 (emphasis in original), citing 21 U.S.C. § 853(d).

     In Juluke, the defendant pled guilty to various narcotic-related offenses, including conspiracy to possess with intent to distribute heroin.  426 F.3d at 325.  Pursuant to 21 U.S.C. § 853(a), the government sought forfeiture of the following: (1) the defendant's home; (2) three handguns, two found in the defendant's house and one found in his wife's car; (3) $20,575 found in the defendant's attic; (4) $14,405 from the defendant and his wife's

joint bank account; and (5) $75,575 in jewelry.  <u>Id.</u>  At sentencing, the trial court ordered forfeiture of all identified property except for the handgun found in the wife's vehicle.

The Fifth Circuit affirmed the forfeiture of the defendant's home because the evidence showed that at least some portion of the property had been used for the storage of narcotics.  <u>Id.</u> at 326. The trial court's forfeiture order pertaining to the money was also affirmed because (1) the amount of money found in the defendant's home exceeded the defendant's legitimate sources of income, and (2) the bank account was used to facilitate the defendant's illegal activity.  <u>Id.</u> at 327.  The Fifth Circuit, however, reversed the trial court's decision regarding the jewelry because the government failed to show a connection between the offense and the jewelry. The court acknowledged that the government is entitled to a presumption of forfeitability where it is shown that the property was acquired during the period of the violation and there are no other likely sources for such property; however, the government produced no evidence as to when the jewelry in question was purchased.  <u>Id.</u> at 328.

A.  <u>Has the requisite nexus been established between Odom's offense and his Lexus?</u>

The government seeks forfeiture of Odom's vehicle under the premise that it was used to **facilitate** his drug offense, not that it was acquired through proceeds of the violation.  The Fifth

-13-

Circuit has consistently held that forfeiture is proper where the vehicle is used "in any manner" to facilitate the sale of a controlled substance. <u>United States v. Narviz-Guerra</u>, 148 F.3d 530 (5th Cir. 1998) (upholding forfeiture of truck used to facilitate drug transactions); <u>United States v. One 1977 Cadillac Coupe DeVille</u>, 644 F.2d 500 (5th Cir. 1981) (holding the "the use of the vehicle to transport the dealer to the scene forms a sufficient nexus between the vehicle and the transaction to validate forfeiture"); <u>United States v. One 1979 Mercury Cougar XR-7</u>, 666 F.2d 228 (5th Cir. 1982); <u>Wingo v. United States</u>, 266 F.2d 421 (5th Cir. 1959) (use of automobile to transport large amounts of cash from illegal lottery business made property subject to forfeiture); <u>see</u> <u>also</u> <u>Juluke</u>, 426 F.3d at 326 (storage of narcotics in car located in defendant's driveway justified finding that the house facilitated the charged crime); <u>United States v. Littlefield</u>, 821 F.2d 1365, 1367 (9th Cir. 1987) ("By specifying that property is subject to forfeiture if it was used 'in any manner or part' to commit or facilitate a drug offense, Congress plainly provided for forfeiture of property even where only a portion of it was used for the prohibited purposes").

At the first forfeiture hearing, the government proffered the testimony of Mississippi Bureau of Narcotics ("MBN") Officer Phillip Robertson.  Officer Robertson testified that, pursuant to a valid search warrant, the MBN wiretapped Odom's home telephone

between September 21, 2001 and December 12, 2001. (Odom Forfeiture Hearing Tr., at 79.)   On November 16, 2001, Odom was recorded conversing with Chastity Williams – a coconspirator.   In this exchange, Odom requested that Williams pick up money owed to Odom by Terrell Donaldson.   On November 17, 2001, another conversation between Odom and Williams was recorded, in which they arranged to meet so that Williams could turn over the money to Odom.   After hearing this conversation, MBN officers set out to intercept Odom. Officer Robertson, along with other MBN officers, stopped Odom in a white Lexus LS 430.   A canine unit was then dispatched to the scene, and the dog indicated that the car contained drugs. Robertson searched the vehicle, and although he found no drugs, Robertson did find $39,900 in cash which was wrapped in freezer bags and then duct-taped into two separate bricks. (See generally June 21, 2005 Forfeiture Tr., at 80-85.)

The government contends that this $39,900[6] represents proceeds of cocaine sales, and that since the Lexus was used to transport those proceeds, it should be forfeited as facilitating the conspiracy with which the defendant pled guilty.   It is settled in the Fifth Circuit that a conspiracy continues until the defendant fully realizes his anticipated economic benefit.   United States v. Girard, 744 F.2d 1170, 1172 (5th Cir. 1984); United States v.

---

[6]Although the MBN initially seized the $39,900, it was returned to Odom.

Azeem, 946 F.2d 13, 16 (2d Cir. 1991) ("A conspiracy continues
after the occurrence of the underlying offense and is not completed
until the conspirators receive their payoffs."). Thus, at the time
Odom received the $39,900 in drug-related proceeds, the conspiracy
was still in effect. Odom drove the Lexus to meet Williams, where
he retrieved the proceeds, and he was returning to his residence
with the proceeds when he was stopped by Officer Robertson. See
United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1187-88 (9th
Cir. 1995) (upholding forfeiture where defendant drove truck to
meeting where he took possession of the proceeds of an earlier drug
sale).[7] Section 853(a)(2) of Title 21 requires forfeiture of "any
property used . . . to facilitate the commission of [a Title 21]
violation." Accordingly, the Court finds that Odom's Lexus was
used to facilitate the continuation of the conspiracy for which he
pled guilty and must be forfeited.

    B.   Has the requisite nexus been established between Odom's
        offense and Club Rolex?

The government seeks forfeiture of Club Rolex, which is a
nightclub located in Claiborne County, Mississippi. The club was
purchased by Melvin Anderson at the direction of Odom, and it was

---

[7]The Court in One 1986 Ford Pickup, stated, "Distribution of
the proceeds of the transaction obviously has a 'substantial
connection' to the sale of controlled substances -- indeed, it is
an essential and integral part of that process." Id. at 1187.

titled in the names of Jessie Green and Anitra Devine.[8]     Odom owned various rental properties,[9] and Anderson was in charge of collecting the rent generated. Anderson testified at the first forfeiture hearing that he collected rent for Odom through Emony Management, which is a company created by Anderson. (Forfeiture Tr., at 43.)  Anderson further testified that Emony Management's bank account was created for the sole purpose of collecting rent money, and it was never used by Odom for depositing drug money. Club Rolex was purchased for $58,000, which represents (1) a $5,000 check written by Anderson from the Emony Management bank account, and (2) $53,000 in the form of a cashier's check received by Odom as a loan from Trustmark Bank.

The government has failed to show a nexus between Club Rolex and Odom's criminal offense, i.e., conspiracy to possess with intent to distribute cocaine.  Section 853(a) only allows forfeiture of property that is either a proceed of a drug offense or was used to facilitate a drug offense.  With regard to Club Rolex, no evidence has been proffered to show either.  While it is true that a presumption of forfeitability arises where the government shows that property was acquired during a period of time

_____

[8]Anitra Devine is Anderson's wife and Odom's sister.  Anderson and Odom are brother-in-laws.

[9]Although somewhat confusing, Odom apparently rented out three trailers, three houses, and one apartment with an upstairs and downstairs tenant. (Forfeiture Tr. at 62-63.)  Each unit generated $350 per month for a total of $2,800.

-17-

when the defendant lacked a sufficient legitimate source of funds
to pay for the property, such a presumption, with regard to Odom,
is inappropriate in this case.[10]  See <u>United States v. Juluke</u>, 426
F.3d 323, 328 (5th Cir. 2005) (reversing district court's
invocation of the "no legitimate source of funds" presumption
because government failed to provide date property was acquired).
The testimony reveals that Odom's portion of the purchase price,
i.e., $53,000, was legitimately obtained from Trustmark Bank as a
loan.  Accordingly, the government is not entitled to a forfeiture
of Club Rolex under 21 U.S.C. § 853.

   C.   <u>Is the Government Entitled to a Money Judgment?</u>

   The government seeks a money judgment against Odom in the

_____

   [10]The only evidence which tends to date Odom's acquisition of
rental property is Anderson's plea colloquy.  At Anderson's guilty
plea hearing, the Court asked the United States Attorney to
describe what proof the government would put on in the event of
trial.  The U.S. attorney responded, "Melvin Anderson knew . . . by
reputation or otherwise, of Mr. Odom's dealing of drugs and that
being the source of his income.  He also helped Mr. Odom collect
rent on properties that Odom purchased with these illegal funds."
(Anderson Plea Hearing Tr., at 20-21.)  When asked whether he
"essentially" agreed with the government's assertion, Anderson
responded in the affirmative.  (<u>Id.</u> at 22.)
   At the forfeiture hearing, Anderson further elaborated that he
had heard that Odom may be a drug dealer, but he had no personal
knowledge of Odom's criminal activities and did not ask any
questions.
   The date of acquisition of Odom's real rental property is a
matter of public record and easily discernable.  Due to the paucity
of evidence presented concerning the acquisition date of Odom's
rental property and the availability of conclusive evidence, the
Court finds that the government has failed to show by a
preponderance of the evidence that Odom's rental property was
acquired with during a time period in which he lacked a legitimate
source of funds.

amount of $292,500, which represents the total street value of
cocaine handled by Odom in 2000 and 2001.  A money judgment is an
*in personam* judgment which "permits the government to collect on
the forfeiture order in the same way that a successful plaintiff
collects a money judgment from a civil defendant." United States
v. Hall, 434 F.3d 42, 59 (1st Cir. 2006).  Section 853 must be
liberally construed with its purpose – to punish convicted drug
offenders and disgorge them of their ill-gotten gains – kept in
mind.  United States v. Casey, 444 F.3d 1071, 1073-74 (9th Cir.
2006).

     In the case at bar, Odom pled guilty to conspiring to possess
with intent to distribute more than five kilograms of cocaine
hydrochloride.  Moreover, Odom agreed in his memorandum of
understanding that he distributed over 15 kilograms of cocaine.
(See also Odom Sentencing Tr., at 7.)  Evidence was presented at
the June 21, 2005 forfeiture hearing that one kilogram of cocaine
has a street value between $19,500 and $21,000.  As such, the
government is entitled to a monetary judgment in the amount of
$292,500.[11]  See United States v. Huggins, 376 F. Supp. 2d 580, 584-

---

[11]Also, money judgments are proper "substitutes" under §
853(p).  Section 853(p) provides that the government can seek
forfeiture of substitute assets in the event that the defendant
procures the unavailability of either the proceeds of the drug
offense or its facilitating property.  Clearly, the cocaine itself
facilitates the crime of conspiracy to possess with intent to
distribute cocaine.  Thus, Section 853(p) provides additional
authority for the issuance of a monetary judgment against Odom.
See generally Casey, supra.

85 (D. Del. 2005) (granting, in a § 846 prosecution, government's requested money judgment which was based on the street value of one kilogram of cocaine multiplied by the amount of cocaine purchased by the defendant for distribution).

## III.  Merits of the Forfeiture Claim Against Anderson

Anderson pled guilty to conspiring to launder money in violation of 18 U.S.C. § 1956(h).  As it pertains to Anderson, the "overt acts" portion of Count 2 states, "On August 26, 2002, Melvin Anderson, acting as the agent of Reginald Odom, purchased a piece of real property for $58,000.00 and placed title to this property in a nominee's name."  (Indictment, 3.)  The government seeks forfeiture of Club Rolex under 18 U.S.C. § 982, which, with regard to money laundering, provides for forfeiture of any property "involved in such offense, or any property traceable to such property," or in the alternative, a money judgment.  Many circuits have construed the "involved in" language of Section 982 broadly to include both the corpus of the transaction and any property used to facilitate the laundering.  See United States v. Huber, 404 F.3d 1047, 1056 (8th Cir. 2005); United States v. McGauley, 279 F.3d 62, 76–77 (1st Cir. 2002) (citing United States v. Baker, 227 F.3d 955, 970 n.4 (7th Cir. 2000) and United States v. Tencer, 107 F.3d 1120, 1135 (5th Cir. 1997)); United States v. Bornfield, 145 F.3d 1123 (10th Cir. 1998).  See also United States v. Hawkey, 148 F.3d 920, 927–28 (8th Cir. 1998) ("Facilitation [of a laundering offense]

occurs when the property makes the prohibited conduct 'less difficult or more or less free from obstruction or hindrance.'") (quoting <u>Tencer</u>, <u>supra</u>).

Courts have held that when clean funds and dirty funds are commingled together for the purpose of disguising the nature of the illegal funds, the asset which was purchased with both clean and dirty funds may be forfeited as being "involved in" or facilitating the laundering. <u>United States v. All Funds on Deposit</u>, 255 F. Supp. 2d 56, 68 n.16 (E.D.N.Y. 2003), <u>quoting United States v. Moore</u>, 27 F.3d 969, 976 (4th Cir. 1994). Innocent funds, however, may not be forfeited under a facilitation theory simply because they were commingled. Instead, the act of commingling must have facilitated the money laundering conspiracy in some way. The Court finds that the purchase of Club Rolex did facilitate the money laundering conspiracy inasmuch as the purchase of the real estate further dispersed and hid the laundered funds.

Moreover, even if Club Rolex had not facilitated the laundering conspiracy, it would nevertheless be forfeitable as the corpus of the laundering transaction. As stated by the Eighth Circuit in <u>Huber</u>, "if the legitimately obtained funds are part of a transaction that also involved proceeds of a specified unlawful activity, they are forfeitable as the corpus of the money-laundering offense." <u>Huber</u>, 404 F.3d 1061 n.11. In the case at bar, the illicit funds ($5,000 from Emony Management) were combined

with legitimate funds (Odom's $53,000 bank loan) to purchase Club Rolex.  Count 2 of the indictment charges that the actual act of purchasing Club Rolex constituted money laundering.  Some of the funds used in the transaction were clean, while some were dirty.  Thus, Club Rolex itself, in its entirety, is forfeitable as the corpus of Anderson's money laundering conviction.

## CONCLUSION

Inasmuch as both defendants sought a continuation of the forfeiture hearing and expressly waived their rights to assert any claim of prejudice due to delay, this forfeiture matter is properly before the Court.  The defendants' procedural objections are without merit.  As to the merits pertaining to Odom, the Court finds by a preponderance of the evidence that the government has met its burden with regard to (1) Odom's Lexus and (2) the $292,000 money judgment sought against Odom.  Moreover, the Court finds that the government met its burden of establishing the forfeitability of Club Rolex with regard to Anderson.  Lastly, Odom and Anderson's judgments of conviction should be amended nunc pro tunc to include this Order of Forfeiture.  See United States v. Yeje-Cabrera, 430 F.3d 1, 16 (1st Cir. 2005), citing United States v. Loe, 248 F.3d 449, 464 (5th Cir. 2001).  Accordingly,

IT IS HEREBY ORDERED that an Order of Forfeiture be entered as follows:

(1)   Reginald Odom's Lexus 430 LS is forfeitable;

(2)   The government is entitled to a money judgment against Reginald Odom in the amount of $292,500.00; and

(3)   The real property located in Claiborne County, Mississippi described as "Club Rolex" throughout this litigation is forfeitable.

IT IS FURTHER ORDERED that the government is to provide notice of this Order as required by 18 U.S.C. § 853(n).

IT IS FURTHER ORDERED that Odom and Anderson's judgments of conviction be amended _nunc_ _pro_ _tunc_ to include this Order of Forfeiture.

SO ORDERED this the __21st__ day of August, 2007.


___s/David Bramlette_____
UNITED STATES DISTRICT JUDGE